692 So.2d 216 (1997)
STATE of Florida, Appellant,
v.
Henry D. EVANS, Appellee.
No. 96-2551.
District Court of Appeal of Florida, Fourth District.
April 9, 1997.
Rehearing Denied May 15, 1997.
*217 Robert A. Butterworth, Attorney General, Tallahassee, and Denise S. Calegan, Assistant Attorney General, West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellee.
STEVENSON, Judge.
This is an appeal from an order of the Circuit Court of Indian River County granting defendant Henry Evans' Motion to Suppress. The trial court granted the motion on the basis that the information which the police used to justify the stop  although apparently providing reasonable suspicion of criminal activity  was an uncorroborated, anonymous tip. We reverse because the tipster in the instant case was a "citizen-informant," whose tip is presumed in the law to be reliable, needing little, if any, corroboration before it can justify an investigatory stop.
The Facts
Drema Steele, a manager at a McDonald's on U.S. 1 in Vero Beach, was working at the drive-through one evening at around 10:30 p.m., when the defendant, Henry Evans, placed an order. Ms. Steele believed that Evans was intoxicated and testified that, to the best of her knowledge, Evans "was wasted." She noticed that he was "incoherent," "fumbling to get the bag of food," and "his eyes were ... really dilated." Furthermore, she could smell alcohol.
While Evans was still in line between two other vehicles, Ms. Steele phoned 911. She reported her name, her address, her location, and that she was the manager of the McDonald's. Likewise, she reported the customer's apparent drunkenness, and provided a description of his vehicle  a small blue Honda low rider truck  and its tag number.
Officer Roger Hall arrived at McDonald's after being advised by the dispatcher that a McDonald's employee had called about an intoxicated driver. Officer Hall did not know the caller's name, but he knew that the caller was "somebody from McDonald's." When Officer Hall pulled into the parking lot, he and Ms. Steele looked at each other, and she pointed at the defendant's vehicle to let him know it was the suspect. The vehicle's description and tag number matched those provided by Ms. Steele to the dispatcher and relayed to Officer Hall. Officer Hall waited for the truck to exit the drive-through and pull onto the street, after which he pulled over the vehicle.
According to Officer Hall's police report, Evans smelled of alcohol and his speech was "mumbled." After conducting some physical performance tests, Officer Hall attempted to arrest Evans; however, Evans resisted and a struggle ensued. After Evans was subdued, a search of his vehicle revealed half a bottle of beer and ten packages of marijuana. Evans was charged with driving under the influence of alcohol, resisting arrest, and possession of marijuana with intent to sell.
Evans moved to suppress all physical and testimonial evidence on the ground that the initial stop was without the requisite reasonable suspicion. At a hearing on the motion, defense counsel argued that Ms. Steele's call was an "anonymous tip," which was not sufficiently corroborated  as anonymous tips must be  to justify stopping him. In rebuttal, the State argued that this case is governed by Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), which *218 addresses anonymous tips.[1] The prosecutor then argued that Ms. Steele's tip was a "very good tip" because it was highly detailed. The defense then pointed out that Alabama v. White requires corroboration of the tip and that, here, "there was no corroboration whatsoever."
The trial court granted Defendant's Motion to Suppress, citing Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996). Pinkney addresses the reasonable suspicion necessary to stop a vehicle when the police respond to an anonymous tip.
The State does not argue on appeal that the tip in this case was not anonymous. Thus, both parties start from the assumption that Ms. Steele was an anonymous informant. As explained below, this assumption is incorrect. The true character of the tipster in this case was that of a "citizen-informant." Unfortunately, both parties enticed the trial judge to assess the reliability of Ms. Steele's tip under the wrong legal standard and, therefore, led the court to error in granting the motion to suppress.

Reasonable suspicion
An investigatory stop, like the one in this case, must be based upon "reasonable suspicion." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Among the definitions of "reasonable suspicion" is such suspicion as would "warrant a man of reasonable caution in the belief that [a stop] was appropriate." Id. at 22, 88 S.Ct. at 1880 (quoting Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

Tips and tipsters
Not all tips are of equal value in establishing reasonable suspicion; they "may vary greatly in their value and reliability." Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). For this reason, the classification of Ms. Steele's call as an anonymous tip is of critical importance. Anonymous tips are at the low-end of the reliability scale:
The opinion in [Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is "by hypothesis largely unknown, and unknowable." Id. at 237, 103 S.Ct. at 2332.
Alabama v. White, 496 U.S. at 329, 110 S.Ct. at 2415.[2]
Because an anonymous caller's basis of knowledge and veracity are typically unknown, these tips justify a stop only once they are "sufficiently corroborated" by police. Id. at 330, 110 S.Ct. at 2416. Accord Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996)(anonymous tip requires "detailed and specific information corroborated by police investigation" since the informant's veracity, reliability, and basis of knowledge are unknown).
In this case, it is difficult to see how Ms. Steele can be deemed an "anonymous" caller: she provided her name, location, and occupation to the police. The ample information in the hands of the dispatcher regarding Ms. Steele's identity is constructively imputed to Officer Hall because Florida courts apply the "fellow officer rule," which operates to impute the knowledge of one officer in the chain of investigation to another.[3]See Berry v. State, 493 So.2d 1098 (Fla. 4th DCA 1986)(an officer receiving a radio transmission to detain a certain individual has authority to stop the person described; the legitimacy *219 of the stop will depend on whether the reporting officer had sufficient grounds to order the person detained); see also United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)(holding that when a police communique has been issued on the basis of articulable facts supporting a reasonable suspicion, any authorized officer may make an investigatory stop on the basis of that bulletin, even though the officer making the stop is not aware of the underlying facts).
The second reason why Ms. Steele was not "anonymous" was that, even considering only the facts known to Officer Hall himself, her identity was readily ascertainable. Officer Hall knew that the informant was a McDonald's employee, and they acknowledged each other when he arrived at the scene, with Ms. Steele pointing to Defendant's vehicle. The cases support the proposition that an informant's actual name need not be known so long as her identity is readily discoverable. See Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979)(holding that a tipster, "fully identified by occupation and address," was "entitled to as much credibility as ... a paid informer or the victims themselves").

A "citizen-informant"
Not only was Ms. Steele an identified informant, rather than an anonymous one, but she qualifies as a "citizen-informant," whose information is at the high end of the tip-reliability scale. "A citizen-informant is one who is `motivated not by pecuniary gain, but by the desire to further justice.'" State v. Talbott, 425 So.2d 600, 602 n. 1 (Fla. 4th DCA 1982)(quoting Barfield v. State, 396 So.2d 793, 796 (Fla. 1st DCA 1981)). As one commentator has explained:
[T]he courts have quite properly drawn a distinction between [informers likely to have been involved in the criminal activity] and the average citizen who by happenstance finds himself in the position of a victim of or a witness to criminal conduct and thereafter relates to the police what he knows as a matter of civic duty. One who qualifies as the latter type of individual, sometimes referred to as a "citizen-informer," is more deserving of a presumption of reliability than the informant from the criminal milieu. As Justice Harlan pointed out in United States v. Harris, [403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)], the ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals."
Wayne R. LaFave, Search and Seizure § 3.3 (3d ed.1996).
This case is governed by Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which instructs that the totality of the circumstances determines whether reliance on the tip was reasonable. Key considerations include Ms. Steele's "veracity" and "reliability." These factors were presumed since she was a citizen-informant reporting criminal activity in the scope of her employment. See Edwards v. Cabrera, 58 F.3d 290, 294 (7th Cir.1995)(holding that a tip from a bus driver made via the bus dispatcher was entitled to a bolstered inference of reliability since he would be risking his employer's displeasure by making a false report). Accordingly, the lower court erred in relying upon Pinkney, which addresses anonymous informants and requires the police to corroborate the tip. See United States v. Williams, 3 F.3d 69 (3d Cir.1993)(although a search warrant labelled the informant as "anonymous," the warrant itself revealed that she was really an identified housekeeper, and the lower court, therefore, erred in not presuming her reliability).
The order of suppression is REVERSED, and this cause REMANDED for further proceedings.
FARMER and GROSS, JJ., concur.
NOTES
[1] The State briefly raised the argument below that this was not an anonymous tip but, apparently, abandoned the argument, and provided no legal authority to the trial judge on the issue.
[2] The Court explained, however, that "[t]his is not to say that an anonymous caller could never provide the reasonable suspicion necessary for a Terry stop." Id.
[3] An arresting officer is not required to have sufficient firsthand knowledge to constitute probable cause, and it is sufficient if an officer initiating the chain of communication receive information from an official source or eyewitness who, it seems reasonable to believe, is telling the truth. This so-called fellow officer rule has been applied to search warrants as well as arrests....

14 Fla. Jur.2d Criminal Law § 650 (1993).